Minnie Florence BREEDEN, Appellant,

v.

Caspar W. WEINBERGER, Secretary Health, Education, and Welfare, Appellee.

No. 73–1899.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1973.

Decided March 19, 1974.

**1004**

C. Waverly Parker, for appellant.

Raymond A. Carpenter, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

Appellant Minnie Breeden was declared ineligible for Social Security disability benefits because the Social Security Administration credited her for 18 quarters of covered employment in the ten years preceding her disability, instead of the 20 quarters required for coverage under 42 U.S.C. § 423(c)(1)(B) (1970). Mrs. Breeden attempted to prove that she had actually earned wages during quarters for which the Secretary's records showed none, but she encountered an administrative requirement that she prove her case "clearly and convincingly." The district court affirmed the denial of coverage. The issues on Mrs. Breeden's appeal are: (1) whether the Social Security Act requires the claimant to prove her case by more than a normal preponderance of the evidence; (2) whether the administrative decision is supported by substantial evidence.

Mrs. Breeden filed an application for disability benefits in 1969. Upon discovering that her Social Security wage records showed a deficit in covered quarters, she began trying to prove that she had earned wages between 1957 and 1963 in addition to those that appeared on her record. Several of the employers had since gone out of business;[1] others had discarded records that would prove or disprove Mrs. Breeden's claims. Consequently, her supporting evidence was limited to affidavits and testimony of people who had known her during the periods in question. Most of her witnesses were relatives, some were friends, others were coworkers and acquaintances, and one was the wife of a former employer. If any substantial part of their testimony were accepted, it would establish coverage for more than the two quarters that Mrs. Breeden lacked. But the administrative law judge rejected all the testimony, including Mrs. Breeden's own account of her work history. He indicated distrust for the testimony of "friends and kinfolk." He complained repeatedly that none of the witnesses produced written records and that much of their testimony was inexact. And he insisted that Mrs. Breeden prove her case "clearly and convincingly." On these grounds he concluded that she had not carried her burden of proof. The appeals counsel adopted his findings and conclusions, and Mrs. Breeden petitioned the district court for review. The district judge remanded the case for more

---

1. One, the Haynes Sportswear plant at Ruckersville, Virginia, had become insolvent soon after Mrs. Breeden left her job there. The employees were forced to attach a truckload of underwear to get their wages. When Mrs. Breeden filed her Social Security claim, none of the company's records could be located.

evidence, indicating that the denial of benefits was not supported by substantial evidence. On remand, the appeals council accepted several pieces of documentary evidence that Mrs. Breeden's attorney offered, but reaffirmed the original decision without convening another hearing. Taking the case a second time on substantially the same record as before, the district judge held that Mrs. Breeden had the burden of proving coverage by "clear and convincing evidence." On a survey of the record he concluded that her evidence did not meet that standard and that the administrative decision was therefore based on substantial evidence. We reverse.

■ The Social Security Act creates a scale of evidentiary weight for the Secretary's wage records. It provides that entries in the records shall serve as evidence of the amounts of wages paid and that the absence of entries shall constitute evidence that no wages were paid. 42 U.S.C. § 405(c)(3) (1970). The records are open to revision for a period of three years, three months, and 15 days. *Id.* § 405(c)(1)(B), (c)(4).[2] After that period expires, an entry acquires conclusive weight, but the absence of an entry merely stands as "presumptive evidence" that no wages were paid. *Id.* § 405(c)(4)(A), (B). Records of self-employment income are also given conclusive effect at the end of the time period. *Id.* § 405(c)(4)(C). Consequently, a claimant cannot dispute the accuracy of a wage entry or a self-employment income record after the time limit expires, but is allowed to prove that a blank wage record is incorrect.

The meaning of "presumptive evidence" in section 405(c)(4)(B) is un-

clear. The agency's regulations simply repeat the words of the statute without explaining them. 20 C.F.R. § 404.804 (1973). Judicial attempts to outline the effect of the statute have gone no further than declarations to the effect that the presumption can be rebutted by "positive" or "substantial" evidence. *E. g.,* Thacker v. Gardner, 268 F.Supp. 663, 665 (W.D.Va.), aff'd, 387 F.2d 387 (4th Cir. 1967), cert. denied, 390 U.S. 1017, 88 S.Ct. 1272, 20 L.Ed.2d 168 (1968); [3] Williams v. Celebrezze, 243 F.Supp. 103, 107 (E.D.Ark.1965). In this case the district court reasoned that because the claimant initially bears the burden of proving coverage, the presumption must enhance the burden of persuasion:

> The Court concludes that it requires the plaintiff to prove that she was covered by the Act during the quarters in question by clear and convincing evidence, by stronger evidence than would be needed had the absence of official records been simply not relevant.

■ We disagree with the district court's characterization of the claimant's burden of proof. It is true that the claimant has the burden of producing evidence in support of his claim and that his claim for benefits may properly be denied if his evidence is insufficient to persuade the Secretary. *See* 20 C.F.R. § 404.701(b) (1973). In another context we have implied that a Social Security claimant need not prove his administrative case beyond a preponderance of the evidence, Cyrus v. Celebrezze, 341 F. 192 (4th Cir. 1965); Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964),[4] and we think the statutory presumption involved here does not alter that rule. As a general rule, presump-

---

2. Some records may be revised after the period expires, but the grounds for revision are limited. 42 U.S.C. § 405(c)(5) (1970); 20 C.F.R. §§ 404.805, 404.806 (1973).

3. This court's affirmance in Thacker v. Gardner did not necessarily approve the district court's apparent insistence on "positive evidence." Our per curiam opinion merely noted that there was substantial evidence to support the administrative decision. The

evidence supporting the claimant's case was apparently far weaker than that in the present case.

4. Under the substantial evidence standard of review, we have few occasions to describe the burden of proof that a claimant bears in administrative proceedings. In *Cyrus* and *Thomas* we said that disability claimants are not required to prove their cases beyond a reasonable doubt.

tions do not operate to raise the standard of proof. Their common effect is to shift the burden of producing evidence and, some say, the burden of persuasion. *Compare* McCormick, Evidence § 345 (Cleary ed. 1972), *with* 9 Wigmore, Evidence §§ 2490–93 (3d ed. 1940). *See* Garland v. Cox, 472 F.2d 875, 877–878 (4th Cir. 1973), cert. denied, Slayton v. Garland, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973). If the presumption operates against a party who already has the burden of proof, it does not necessarily convert a preponderance standard into something stiffer. *See* McCormick, *supra,* § 345, at 829.[5] Instead, the policies underlying a particular presumption govern the measure of persuasion required to escape its effect. *Id.* at 822–23.

 The progression of evidentiary value embodied in the Social Security Act—evidence, presumptive evidence, and conclusive effect—suggests that the provision concerning blank wage records reflects congressional sensitivity to the need to balance two somewhat conflicting purposes. One purpose, akin to the supposed rationale for statutes of limitation, is to guard against false claims after contradictory evidence is unavailable. But Congress did not write a statute of limitations for contradicting blank wage records, as it did for self-employment income reports. The different treatment afforded to blank wage records suggests a second purpose—that Congress intended *not* to penalize wage

earners for the carelessness or dishonesty of their employers. A requirement of proof by clear and convincing evidence would all but destroy this secondary congressional intent. Applying a preponderance standard to the claimant's evidence affords the government reasonable protection against spurious claims and also makes it possible to establish valid ones. We hold that the claimant need not persuade the administrative law judge by any standard of "high probability"; she need only persuade him that it is more probable than not that she received the wages she claims. This is the meaning of the rubric common in jury trials: "satisfied by the greater weight of the evidence." *See* McCormick, *supra,* § 339, at 794–95.

 On review of the administrative law judge's decision, we do not assess the record to decide whether Mrs. Breeden proved her claim by a preponderance of the evidence. Our function is limited to deciding whether the administrative decision is supported by substantial evidence.[6] We must decide, therefore, what weight to accord the statutory presumption on substantial evidence review when the record contains contradictory evidence.[7]

 Under the Thayer "bursting bubble" theory of presumptions, the presumption is a procedural rule that governs the outcome only when the record contains no contradictory evidence. McCormick, *supra,* § 345; 9 Wigmore, Evidence, § 2491 (3d ed. 1940). The

---

5. As McCormick notes, the proposed federal rules of evidence do not provide for an increased measure of persuasion. McCormick, ·*supra,* § 345, at 829 n.85. Proposed rule 301 provides:

> In all cases not otherwise provided for by Act of Congress or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

This standard echoes McCormick's definition of "proof by a preponderance." *Id.* § 339, at 794. Although this rule does not directly control the impact of presumptions in administrative proceedings, we think it persuasive.

6. This court has previously held that our function in reviewing district court decisions on Social Security cases is not defined by Fed.R.Civ.P. 52. Instead the issue before us, as before the district judge, is the substantiality of the evidence to support the administrative findings. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

7. For a discussion of this issue in the context of common law presumptions, *see* Maryland ex rel. Geils v. Baltimore Transit Co., 329 F.2d 738 (4th Cir.), cert. denied, 379 U.S. 842, 85 S.Ct. 80, 13 L.Ed.2d 47 (1964).

Supreme Court once applied this theory to an administrative presumption in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 920 (1970), holding that the presumption had no evidentiary force on review of the administrative decision. Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935).[8] This court chose the same approach in Garland v. Cox, 472 F.2d 875, 879 (4th Cir. 1973), giving purely procedural effect to a presumption that late appointment of counsel was prejudicial to the defendant in a criminal case. The structure of the Social Security Act, however, precludes similar treatment of the presumption involved here. Unlike the statute in *Del Vecchio*, which creates certain presumptions "in the absence of substantial evidence to the contrary," 33 U.S.C. § 920 (1970), the Social Security Act provides that the absence of a record entry shall be "presumptive evidence" that no wages were paid—whether or not there is other evidence. We think the Congress did not intend the presumption to evaporate when contrary evidence is introduced. Instead, we hold this presumption survives the offering of contradictory evidence and thereafter *may* itself constitute substantial evidence that no wages were paid.

But that the administrative judge may choose to accord it continuing weight does not end the inquiry. Under the standards of Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), we must review the entire record, taking into account both the support for the administrative decision and "whatever in the record fairly detracts from its weight." *Id.* at 488, 71 S.Ct. at 464. If reliance on the presumption is arbitrary or if it is not "justified by a fair estimate of the worth of the testimony of witnesses" who support the claimant, *id.* at 490, 71 S.Ct. at 466, we must conclude that the administrative decision is not supported by substantial evidence.

In this case Mrs. Breeden presented evidence relating to seven periods of employment that did not appear on her Social Security record. The Social Security records showed a small amount of wages for one of these periods, and the administrative law judge correctly denied Mrs. Breeden's attempt to prove that she had earned more than the employer had reported. 42 U.S.C. § 405(c)(4)(A) (1970). The administrative law judge rejected all of the evidence Mrs. Breeden offered on the six periods for which the records were blank, primarily on his assessment of the witnesses' credibility. For three of these periods we are satisfied that his conclusion is supported by substantial evidence. Mrs. Breeden's evidence was sketchy and the corroboration she offered was weak.[9] But for the three re-

---

**8.** Subsequent cases reviewing decisions under this statute raise some doubt about the continuing validity of the unqualified language in *Del Vecchio*. In Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 474, 67 S.Ct. 801, 91 L.Ed. 1028 (1947), and O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 361, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965), the Court ascribed some significance to the presumption on review of the administrative decision. The three cases may nonetheless be consistent if *Cardillo* and *O'Keeffe* represent use of the presumption as an expression of the Act's purposes rather than as evidence of the disputed facts.

**9.** The evidence relating to these periods was as follows:

*Spring 1957*: Mrs. Breeden testified that she had worked for a restaurant in Hyattsville, Maryland, for six weeks in the spring of 1957. Although she described the exact location, she could not remember the name of the cafe or its owner. She offered a supporting affidavit from a Mr. Therwanger but the administrative law judge refused to accept it, declaring that it was inexact and that it did not state the source of the affiant's knowledge. We think this ruling was error because the affidavit declared that Mr. Therwanger had gotten the job for Mrs. Breeden and it gave reasonably precise information about the salary and the length of time she worked. Nonetheless, accepting the affidavit and Mrs. Breeden's testimony at face value, we cannot say that the evidence was strong enough to make reliance on the presumption arbitrary.

maining periods we conclude that he dealt arbitrarily with the testimony and ignored the weight of the evidence. In those instances we hold that his findings on the witnesses' credibility and his reliance on the statutory presumption were arbitrary and that his decision is unsupported by substantial evidence.

*1959 and 1960:*

Mrs. Breeden testified that she had worked in an orchard owned by R. S. Graves in Syria, Virginia, in the fall of 1959 and the summer and fall of 1960. She testified that she worked in the packing shed grading apples from the first of October to the middle of November in 1959, when she quit because her baby was ill. She was paid $6 a day for five and one-half days of work per week, for a salary of $33 per week. Her six weeks of work would have entitled her to one quarter of agricultural coverage.[10] In 1960, she testified, she picked peaches for about six weeks in the summer at a salary of $6 per day, five and one-half days a week. On about September 20, 1960, she began picking apples. Apple pickers were paid ten cents per bushel with a bonus of two cents per bushel contingent on a full season's work. She testified that she made between $50 and $75 a week until the first of November, when she began working in the packing shed for $33 a week.

She finished work just before Christmas of 1960, when she received a bonus check for $339, which apparently included her husband's two-cent bonus as well as her own. According to plaintiff's calculations, her wages for 1960 amounted to over $1,000, which would entitle her to a full four quarters of coverage for the year.

Eight witnesses corroborated various parts of Mrs. Breeden's testimony. Her sister, Diane Shiflett, testified that she worked in the packing shed with Mrs. Breeden for three days in 1959 but that she had to quit because she was pregnant. She remembered that her husband had continued to work in the orchard, riding to work with Mrs. Breeden throughout the apple season. Her husband, Floyd Shiflett, also testified that he rode to work with Mrs. Breeden during the 1959 season and that the packing shed salary was about $5 a day. Mrs. Evelyn Shela, who was only 12 or 13 years old in 1959, testified that she had worked with Mrs. Breeden in the packing shed in either 1959 or 1960, and that the salary was $5 a day. Mrs. Anna Meadows, Mrs. Breeden's sister, testified that she worked in the Graves orchard every apple season from 1959 to 1963. She said that Mrs. Breeden had worked in 1959, and that she had "hauled hands" to the orchard. Mrs. Meadows testified that in 1960 Mrs.

*Fall 1957:* Mrs. Breeden testified that she picked apples in the Red Apple Orchard in Martinsburg, West Virginia, from September to December 1957. She produced two witnesses, her sister and brother-in-law, who testified that they had lived with her while she worked in the orchard at that time. On inquiry from the administrative law judge, the orchard responded that it had no record of Mrs. Breeden but that her husband had worked there in 1957. This employment appeared on Mr. Breeden's Social Security record. Although Mrs. Breeden testified that she and her husband were paid separately and that his wage records did not account for the money she made, neither of her witnesses could testify that the orchard had paid her separately. Consequently, we cannot say that the adverse ruling on this point was not supported by substantial evidence.

*Summer 1961:* Mrs. Breeden's Social Security record showed that she worked for Haynes Sportswear in Ruckersville, Virginia, in the quarter ending December 1961. She tried to prove that she had begun working there in July 1961 and should thus be credited with the quarter ending September 1961. Again, her testimony was quite positive, but none of her witnesses could specifically corroborate her testimony that she worked there before September 1961. Accordingly, we cannot say that the administrative law judge's reliance on the statutory presumption was unreasonable.

10. Agricultural wages are not credited strictly by dates but by amounts. A worker is entitled to one quarter of credit for $100 of agricultural wages, up to the limit of four quarters credit in a calendar year. 42 U.S.C. § 413(a)(2)(iv) (1970); 20 C.F.R. § 404.103(c) (1973).

Breeden picked peaches and apples and then worked in the packing shed. She corroborated Mrs. Breeden's testimony about the salary: $6 per day in the packing shed, and ten cents per bushel picking apples, with a two-cent bonus at season's end. She testified that her average salary picking apples was $50 to $60 per week. Mr. Sanford Geer testified that he picked peaches at the Graves orchard in either 1959 or 1960, that Mrs. Breeden was working there at the same time, and that he rode to work with her. He worked for three or four weeks at a salary of $6 per day. Mr. Jesse Meadows submitted an affidavit stating that he had worked with Mrs. Breeden in the Graves orchard in 1959, and that he rode to work with Floyd Shiflett and Mrs. Breeden. He testified that Mrs. Breeden worked about six weeks, until her baby got sick. He said that in 1960 Mrs. Breeden worked from July through December, picking peaches, picking apples, and working in the packing shed. Mr. W. H. Conley, Jr., testified by deposition that he had worked with Mrs. Breeden in the orchard in 1959 and 1960. Following remand, Mrs. Breeden submitted the affidavit of Mr. Eddie Geer. Mr. Geer's affidavit stated that he had worked at the Graves orchard during apple season in 1959 and 1960. He said that Mrs. Breeden worked in the packing shed in 1959 and that she picked apples and worked in the packing shed in 1960.

The administrative law judge rejected all this testimony. In general, he complained that it was imprecise and incredible:

> The wisdom of the statutory presumption as to wages which pere paid after a time limitation passes is exemplified in a case such as this where an individual, without any records whatsoever and without any record by her alleged employers stating that she was gainfully employed during specific periods, appears and alleges by means of a large group of kinfolk and friends that she did, in fact, work in periods 7 to 13 years in the past.

> Memories are short and the passage of time erodes our impressions. What the claimant has done is to bring together a collection of kinfolk and friends, all of whom with aplomb and with such answers as, "I think", etc., corroborate the claimant's story as to events which happened a long time ago. The Hearing Examiner, after viewing these witnesses and the affidavits produced, could not find their statements and testimony contained any degree of credence.

Administrative Transcript at 10. Because no single witness could testify to all the exact dates and the exact amounts, and because several of the witnesses were Mrs. Breeden's relatives, he rejected the testimony of each witness. His treatment of Sanford Geer's testimony is illustrative:

> The testimony of Mr. Geer similarly was based on such statements as, "I made *about 'X' dollars*, I worked *about 'X' weeks*". He did not demonstrate a reasonable knowledge of the exact time Mrs. Breeden worked there, if at all, how much salary she received, her productive capacity while working, etc. This testimony is not substantial and probative of the claimant's work allegations in 1959 and 1960.

*Id.* at 13 (emphasis in original).

The Appeals Council took an even more arbitrary position on remand. Commenting on the affidavit submitted by Mr. Eddie Geer, it noted:

> The Appeals Council does not doubt the claimant's reputation for truth and veracity, nor that of Mr. Geer. However, Mr. Geer's statement is based solely on his memory of events of nearly 13 years ago and is not supported by any records. Memories, even though well intentioned, are not infallible and the passage of time can dim and distort recollections not refreshed by contemporaniously [*sic*] made notes and records.

*Id.* at 313. The substantial effect of such an administrative attitude is to re-

write both the statute and the regulations. Neither require that the claimant have written records, nor, a fortiori, that each corroborating witness have kept a record of Mrs. Breeden's work. The regulation promulgated pursuant to the authority of 42 U.S.C. § 405(a) (1970) provides:

> The amounts of earnings credited to an individual and the periods to which such earnings are credited may be proved by the records of the Administration and *by other evidence of probative value* subject to the limitations prescribed in Subpart I of this part.[11]

20 C.F.R. § 404.702 (1973) (emphasis added).

 We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained. Page v. Celebrezze, 311 F.2d 757 (5th Cir. 1963); Victor Products Corp. v. NLRB, 93 U.S. App.D.C. 56, 208 F.2d 834 (1953); 4 K. Davis, Administrative Law Treatise § 29.06 (1958, Supp.1970). In this case the administrative law judge refused to accept any of the testimony of "friends and kinfolk," not because it was unbelievable but because of the source. But neither the statute, the regulations, nor common sense disqualifies such persons from testifying. The administrative law judge rejected testimony out of hand because it did not establish exact dates and precise wages, but neither the statute nor the regulations require exactitude or precision. We think the fact finder unlawfully fashioned his own exclusionary rule: without some sort of records live testimony will be rejected.

 We agree that a witness's memory of details is relevant to ˊhis credibility, but it cannot be determinative in a situation where the witness was never in a position to know exactly when another person began work or the exact amount of another person's paycheck. Nor can a witness's testimony be rejected solely because it corroborates only one detail of the claimant's testimony. It is also unreasonable to insist that wages be proved precisely. Mrs. Breeden's testimony, corroborated in each particular by one or more witnesses, fairly established that she worked for about six weeks in 1959 at a salary of $33 per week. Even if her salary is calculated on the lowest wage figure cited —$5 per day—the result is a salary of $27.50 per week, enough to give her credit for one quarter of agricultural wages. For 1960, her corroborated testimony establishes four more quarters of credit. She presented corroboration for three to four weeks of peach picking at $33 per week, six weeks of apple picking at $50 to $75 per week, and about six weeks of apple grading at $33 per week. Using the smallest estimates, these figures add up to almost $600, well over the $400 needed to establish four covered quarters.

In assessing the credibility of five of these witnesses, the administrative law judge noted that the Social Security Administration had no *record* that they had worked for the Graves orchard. From this, he apparently inferred that the testimony was collusive—an inference contrary to the congressional scheme that clearly permits oral correction of blank records. That none of them appear on the employment records is, of course, relevant to their credibility, but it is also relevant to the accuracy of the Graves orchard's Social Security reporting. Early in her testimony Mrs. Breeden stated: "I think if you will check the record R. S. Graves, a lot of these names, you can get it, you can find out why I didn't get credit up there, and I've heard a lot of them say that they didn't get any credit either." Adminis-

---

11. The only relevant limitation in Subpart I is an almost verbatim repetition of the statutory provision. 20 C.F.R. § 404.804 (1973).

trative Transcript at 83. Moreover, in response to administrative inquiry about wages paid to Minnie Breeden in 1958, 1959, and 1963, R. S. Graves replied: "Have no Record of Minnie F. Breeden working. If worked any did not make enough to pay SS on." *Id.* at 243. This representation is specifically refuted by the Social Security records, which show that R. S. Graves reported $67 of wages for Minnie Breeden in 1963. Finally, the wage record of each witness is consistent with the hypothesis that he or she worked for R. S. Graves and simply received no credit; each record contains no entry for the quarter in question.[12] Whether or not this evidence proves a consistent pattern of nonreporting, it certainly precludes firm reliance on this employer's wage records in determining the witnesses' credibility.

*Spring 1963:*

Mrs. Breeden's Social Security account includes wages paid by the Green Circle Truck Stop in Zions Cross Roads, Virginia, between April 1962 and August 1963 with the exception of a single quarter, April to June 1963. Mrs. Breeden testified that she worked continuously at that job and that the gap in the Social Security record must have been a mistake. Mrs. Birtie Powell, who had operated the truck stop jointly with her husband, testified that Mrs. Breeden worked "straight through" from the time she began working until she quit, with the possible exception of two or three weeks. In an affidavit she stated that Mrs. Breeden had been paid $45 per week plus board; at the hearing she gave the salary figure as $35 per week. In rejecting Mrs. Powell's testimony al-

together, the trial examiner emphasized this discrepancy and stated that there was no evidence that Mrs. Powell was "involved in the day to day running of this business," or that she maintained any records. But Mrs. Powell did testify that she and her husband operated the truck stop, and the administrative law judge's conclusion to the contrary has no basis in fact. Nor does the salary difference discredit Mrs. Powell; Mrs. Breeden had testified earlier that her weekly wages were $35 when she first took the job and $45 at the end. We think Mrs. Powell's testimony furnished strong corroboration for Mrs. Breeden's testimony. It was the best evidence available at the time, since Mr. Powell had died and the business's records could not be traced through several changes of ownership. Though Mrs. Powell was not the sole proprietress, her testimony is equivalent to evidence furnished by an employer to the effect that the Social Security records are in error. The administrative trial judge's reliance on the presumption in this instance was unreasonable and cannot be deemed supported by substantial evidence.

We conclude that the administrative decision denying coverage was not supported by substantial evidence. Ordinarily we would remand to give the Secretary an opportunity to apply the correct legal standard. This case, however, has been pending in the agency and the courts for almost five years and has been remanded once before for additional evidence. The statute governing review in Social Security cases authorizes us to reverse the Secretary's decision "with or without remanding the cause

12. If believed, Mrs. Breeden's testimony about the amounts the orchard deducted from her wages would suggest other irregularities in its Social Security record-keeping. Mrs. Breeden testified that the employer deducted $10 for Social Security at the end of her work in 1959, though her wages amounted to less than $200. She testified that in 1960 the orchard deducted $10 from her wages in the peach season (about $100), $10 from her wages in the apple season (at least $480), and $12 from the bonus check ($339). In 1963 she testified that she earned about $600 working for R. S. Graves and that they deducted $12 from her wages, telling her that Social Security had gone up. That was the year that R. S. Graves reported paying Mrs. Breeden wages of $67.

for a rehearing." 42 U.S.C. § 405(g).[13] We have previously exercised this discretion. *E. g.*, Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Under this statute, we think it appropriate to reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose. Wayne v. Finch, 313 F.Supp. 898, 902 (M.D.N.C. 1969); *cf.* Nelms v. Gardner, 386 F.2d 971 (6th Cir. 1967); Egan v. Gardner, 277 F.Supp. 929, 932 (N.D.Cal.1968). Because both circumstances are present in this case, we will not delay the case further by remanding to the Secretary on this issue. Instead we remand to the district judge, who should enter judgment for the claimant and direct the Secretary to pay her such benefits, if any, to which she may be entitled under the law and the regulations.

Reversed and remanded.

13. Because the statute authorizes reversal, review of Social Security cases is unusual, if not unique, in the field of administrative law. The Federal Communications Act also authorizes reversal, 47 U.S.C. § 402(h), but the administrative decisions under review are substantially different from those made under the Social Security Act. Section

---

10(e) of the Administrative Procedure Act, which governs judicial review in the absence of a specific statute like section 405(g), does not authorize reversal. 5 U.S.C. § 706. The standard legislative text in special statutory review authorizes the court to affirm, modify, or set aside an administrative decision, but not to reverse outright. E. g., 15 U.S.C. § 45(c) (FTC); 15 U.S.C. §§ 77i, 78y (SEC); 15 U.S.C. § 717r (FPC); cf. 29 U.S.C. § 160(f) (NLRB; enforce, modify or set aside). Under some forms of statutory review courts cannot modify administrative orders. 21 U.S.C. §§ 348(g)(2), 371(f)(3) (FDA; affirm or set aside); 33 U.S.C. § 921 (Longshoremen's and Harbor Worker's Compensation Act; enforce, suspend, or set aside).