Arthur E. TAYLOR

v.

Margaret M. HECKLER, Secretary, Department of Health and Human Services.

Civ. A. No. H–81–814.

United States District Court, D. Maryland.

May 15, 1984.

---

481

Myrna A. Butkovitz, Legal Aid Bureau, Inc., Bel Air, Md., for plaintiff.

Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

ALEXANDER HARVEY, II, District Judge.

This action is brought under 42 U.S.C. § 405(g) for review of a final decision of the Secretary of Health and Human Services denying plaintiff's claim for disability benefits.

On November 14, 1979, Arthur E. Taylor applied for disability insurance benefits under Title II (Tr. 286–89), and for Supplemental Security Income benefits under Title XVI of the Social Security Act (Tr. 192–95), alleging disability due to back and hand problems. Benefits were denied administratively (Tr. 196–97), and again upon reconsideration. (Tr. 200–01). Plaintiff's case was then heard at several administrative proceedings.[1] Most recently, an Ad-

1. Initially, plaintiff appeared before an Administrative Law Judge (ALJ) who rendered a written decision denying benefits on October 21, 1980. (Tr. 58–67). The Appeals Council denied review on January 30, 1981. (Tr. 53–54). Plaintiff filed suit in this Court on April 3, 1981. (Paper No. 2). This Court remanded the case to the Secretary, at his request, on July 27, 1981. (Paper No. 5). The Appeals Council thereafter remanded the case to an ALJ for further administrative proceedings on August 11, 1981. (Tr. 50–51). The ALJ rendered his written decision

ministrative Law Judge (ALJ), before whom plaintiff appeared, heard the case on August 17, 1982 (Tr. 117–191), and denied benefits in a written recommended decision issued on September 21, 1982. (Tr. 9–18). His recommended decision was adopted by the Appeals Council on March 24, 1983, thus making it the final, reviewable decision of the Secretary. The case is now before the Court on the parties' cross motions for summary judgment. (Papers No. 11, 12). No hearing is deemed necessary.

Plaintiff testified at the administrative hearing[2] that he was born on March 16, 1947, and has worked two to three years as a heavy equipment operator. (Tr. 120–21). He completed four years of formal education, and dropped out of the fifth grade at the age of fourteen or fifteen. (Tr. 121–22). Plaintiff stated that he can write his name, but cannot read (Tr. 124), and has difficulty counting change and handling money. (Tr. 128–29). He was involved in a 1977 automobile accident in which he injured his head, back, neck, hands and legs. (Tr. 131). He stated that he drives an automobile and sometimes cuts the grass with some difficulty. (Tr. 136). Plaintiff last worked in 1978 for a construction company, but was forced to quit after two or three months. (Tr. 133). Finally, plaintiff stated that he experiences pain in his legs (Tr. 137), and that his back and hands ache when he drives an automobile. (Tr. 146).

The pertinent medical evidence of record includes an August 22, 1979 consultative report by Dr. Mirza S. Baig, an orthopedic specialist, who examined the plaintiff for complaints of pain, numbness and stiffness in the right arm and lower lumbar area. (Tr. 321). Examination revealed, *inter alia*, that rotation of the neck and the shoulder caused pain in plaintiff's hand. Flexion of the arm caused obliteration of the radial pulse on the right side and was accompanied by numbness and tingling in the thumb and finger. Although muscle power was good, there was some sensory loss in the ulnar[3] distribution on the right side. (Tr. 321). Dr. Baig opined that plaintiff's symptoms may be due to thoracic outlet syndrome.[4]

On September 14, 1979, plaintiff was admitted to Southern Maryland Hospital, with a diagnosis of thoracic outlet syndrome. (Tr. 231). A thoracic aortogram demonstrated no areas of abnormal constriction or occlusion. (Tr. 235). X-rays of plaintiff's chest revealed a normal chest. (Tr. 237).

A September 21, 1979 electromyogram report states that motor nerve conduction tests were within normal limits. (Tr. 241–42). However, prolongation of motor and sensory latencies in the right median nerve were compatible with carpal tunnel syndrome.[5] (Tr. 241).

A November 20, 1979 report by Dr. Baig offers a diagnosis of bilateral carpal tunnel syndrome and states that plaintiff's lower lumbar pain is suggestive of a lumbo-sacral sprain. (Tr. 243–44). Dr. Baig stated that both plaintiff's arms were impaired, and

on March 12, 1982 (Tr. 31–44), and the Appeals Council again remanded the case for further proceedings on May 25, 1982. (Tr. 22–23). Another hearing was held, and the ALJ made his recommended decision on September 21, 1982 (Tr. 9–18). This decision was adopted by the Appeals Council on March 24, 1983. (Tr. 6–7). On May 26, 1983, this Court granted plaintiff's motion to reopen the case. (Paper No. 9).

2. A vocational expert also testified at the administrative hearing and opined that plaintiff could perform several specific jobs. (*See* Tr. 152–189). However, because of the disposition of this case, it will be unnecessary to consider either the vocational expert's conclusions or plaintiff's contentions concerning those conclusions. (*See* Paper No. 11 at 19–23).

3. Pertaining to the inner and larger bone of the forearm, on the side opposite that of the thumb. *Dorland's Illustrated Medical Dictionary* (25th ed. 1974).

4. Compression of nerves in the chest, characterized by pain in the arms and paresthesia of the fingers. (*Id.*)

5. A complex of symptoms resulting from compression of the median nerves in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow. (*Id.*).

that he could use his upper extremeties only for gross movement. (Tr. 243).

Plaintiff was admitted to Calvert Memorial Hospital on January 6, 1980, with a diagnosis of right carpal tunnel syndrome. (Tr. 249). He underwent release of carpal tunnel syndrome and lysis [6] of the nerve on the following day. Plaintiff was released on January 8, 1980 without pain, numbness or tingling in the fingers. (Tr. 250).

A March 29, 1980, psychological report by William Collins, Ph.D., offers diagnoses of mild mental retardation, generalized anxiety disorder, and a dependent personality. (Tr. 260-62). Testing revealed that plaintiff had a WAIS full scale I.Q. of 69. (Tr. 261). He was described as "not psychotic ... [but] experiencing significant anxiety which appears related to his inability to be productive, self-supportive, and independent ..." (*Id.*)

Hospital records from St. Mary's Hospital indicate that plaintiff was admitted on August 7, 1980, due to spasms and tightness in his chest. (Tr. 322). Chest x-rays were unremarkable. He was discharged two days later with diagnoses of muscle spasm, etiology undetermined, possible cardia ischemia [7] as noted by EKG, and gout. (Tr. 322).

The medical evidence also includes a September 29, 1981, neurosurgical consultation by Dr. James W. Watts. (Tr. 271-73). Examination revealed that plaintiff had a full range of lateral bending to either side and good forward bending, with slight tenderness in almost the entire back and over both thighs and legs. (Tr. 272). Dr. Watts noted fasciculations [8] over the muscles of the right arm near the elbow. He opined that plaintiff could not do heavy labor work. (*Id.*).

A March 18, 1981, report by Dr. Baig notes tenderness over plaintiff's left posterior sacroiliac spine and the lower lumbosacral region. (Tr. 295-97). Plaintiff also complained of moderate pain and stiffness in both hands. (Tr. 296). Dr. Baig offered a clinical impression of, *inter alia*, lumbosacral strain. (Id.). He opined that plaintiff was "unable to perform his normal duties, and he should be rehabilitated to do a job that does not involve lifting or pushing heavy objects weighing over 10-15 pounds." (Tr. 297).

An October 10, 1981, psychiatric report and supplemental questionaire from Dr. Harvey Fernbach reveal that plaintiff has a mild to moderate psychiatric limitation. (Tr. 274-77). Dr. Fernbach noted that plaintiff's allegations of pain were consistent with clinical findings and could moderately affect his ability to function. (Tr. 277). He opined, however, that plaintiff could be "gainfully employed in some simple tasks." (Tr. 275).

A June 16, 1982, physical capacities evaluation by Dr. Watts indicates that plaintiff can sit or stand for one to two hours at a time, and can walk for an hour at a time. (Tr. 329). During an eight hour day, plaintiff can sit and stand for three to four hours, and walk for two to three. He can occasionally lift and carry up to ten pounds. However, he cannot use his hands for either simple grasping or fine manipulation. Dr. Watts stated that plaintiff can occasionally squat, crawl, and reach. (Tr. 329).

Finally, medical evidence of record includes an undated consultative neurologic evaluation by Dr. Nirmala Khot Fernbach. (Tr. 229-30). On examination, plaintiff's back was supple and his spine normal. (Tr. 229). Plaintiff was able to bend and straight leg raising was conducted with no restriction. Dr. Fernbach opined that there was no limitation of back movements or back strain. (Tr. 230).

The ALJ considered the aforementioned evidence and concluded that plaintiff was suffering from post-traumatic stress disor-

---

6. Mobilization by division of restraining adhesions. (*Id.*).

7. Deficiency of blood supply to the heart muscle. (*Id.*).

8. Small local contractions of muscle, visible through the thin skin, representing a spontaneous discharge of a number of fibers innervated by a single motor nerve filament. (*Id.*).

484

der, residuals of carpal tunnel syndrome, chronic lumbosacral strain, and mild mental retardation. (Tr. 16). He noted that these impairments limited the plaintiff's ability "to perform work requiring prolonged standing and walking, repeated bending, lifting over ten pounds, and using his hands for pushing and pulling of arm controls or fine manipulation." (*Id.*) The ALJ concluded that although plaintiff was "capable of less than a 'wide range' of sedentary work," he was capable of performing jobs of a delivery person in a limited locale, arcade attendant, security guard, and film sorter. (Tr. 16–17).

The function of this Court on review is not to try plaintiff's claim *de novo*, but rather to leave the findings of fact to the Secretary of Health and Human Services and to determine upon the whole record whether the Secretary's decision is supported by substantial evidence. *King v. Califano,* 599 F.2d 597 (4th Cir.1979); *Teague v. Califano,* 560 F.2d 615 (4th Cir. 1977). Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict were the case before a jury. *Teague v. Califano; Johnson v. Califano,* 434 F.Supp. 302 (D.Md. 1977). If there is substantial evidence to support the decision of the Secretary, then that decision must be upheld. *Jolley v. Weinberger,* 537 F.2d 1179 (4th Cir.1976); *Blalock v. Richardson,* 483 F.2d 773 (4th Cir.1972).

Plaintiff asserts that the Secretary's decision is incorrect because he meets a listed impairment, *see* 20 C.F.R. Part 404 Subpart P, Appendix I (1983), and, thus, should be found disabled. *See* 20 C.F.R. at Section 404.1520(e). He contends that he meets the provisions of 20 C.F.R., Part 404 Subpart P, Appendix I, Section 12.05 C. The latter section provides that mental retardation resulting in disability is manifested by an "I.Q. of 60 to 69 inclusive ... and a

physical or other mental impairment imposing additional and significant work-related limitations of function." *Id.* The regulations further provide that, in making this determination, the lowest WAIS score achieved should be used. *Id.* at Section 12.00 B 4.

Although the ALJ did not specifically consider the applicability *vel non* of a listed impairment, the Appeals Council did consider this contention. The Appeals Council noted: "The claimant still retains the ability to sit for seven to eight hours, stand for three to four, walk for two to three, and lift up to ten pounds. The claimant cannot return to his prior heavy work as a heavy equipment operator and a pipe layer but can do the sedentary jobs enumerated by the vocational expert." (Tr. 6). The Appeals Council, thus, concluded that plaintiff did not have a "significant" work-related limitation of functioning.

This Court is convinced that the Secretary's decision is not supported by substantial evidence. The evidence clearly supports plaintiff's argument that he meets the listed impairment set forth in Section 12.05 C.

The Secretary's regulations do not discuss what constitutes a "additional and significant work-related limitation of function." However, this concept appears analogous to that of a severe impairment, which must "significantly limit [a claimant's] physical or mental abilities to do basic work activities." 20 C.F.R. at Section 404.1521(a). That section also provides, in pertinent part:

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ....

20 C.F.R. at Section 404.1521(b)(1).

Clearly, there is medical evidence that the plaintiff has physical or mental impairments, other than his mental retardation, that impose certain work-related limitations of function. Plaintiff has difficulty per-

forming physical functions such as lifting, pushing, pulling, reaching, carrying, and handling. Dr. Baig, plaintiff's treating physician, stated that plaintiff could use his upper extremities "for gross movement only" (Tr. 243), and noted that plaintiff could not perform jobs that "involved lifting or pushing heavy objects weighing over 10–15 pounds." (Tr. 297). Dr. Watts, a consulting neurologist, stated that plaintiff "obviously could not hold a position that requires repetitive use of his hands" (Tr. 328), and noted that plaintiff could not use his hands for the pushing and pulling of arm controls. (Tr. 329). It was this evidence, in part, that persuaded the ALJ that plaintiff could not perform "work involving prolonged walking and standing, repeated bending, lifting over ten pounds, and using his hands for pulling and pushing of arm controls or fine manipulation." (Tr. 17). Indeed, the ALJ concluded that plaintiff had "the residual functional capacity for less than a full range of sedentary work...." (*Id.*).

The ALJ specifically found that plaintiff was impaired by, *inter alia*, the residual carpal tunnel syndrome and chronic lumbosacral strain. (Tr. 17). In view of the uncontroverted evidence of plaintiff's additional physical limitations, the Secretary's decision can stand only if there is substantial evidence that these limitations are not "significant." A recent decision in this Court has specifically considered the meaning of this term:

> Unfortunately, the Secretary's regulations do not define the term "significant." Therefore, the Court must give the word its commonly accepted meanings, among which are, according to *Webster's Dictionary*, (2nd International Unabridged Ed.1948), "having a meaning" and "deserving to be considered." The antonym of "significant" is given in the dictionary as "meaningless."

*Jones v. Schweiker*, 551 F.Supp. 205, 208 (D.Md.1982).

Certainly, plaintiff's physical limitations, in terms of work-related limitations of function, are not meaningless; they are "deserving to be considered." The fact that they are vocationally significant is evidenced by the ALJ's conclusion that plaintiff cannot perform a full range of sedentary activity.

Given the uncontroverted findings and opinions of Dr. Baig and Dr. Watts, and the specific findings of the ALJ, which were adopted by the Appeals Council, plaintiff meets the disability listing of Section 12.05 C with his 69 I.Q., residuals of carpal tunnel syndrome, and chronic lumbosacral strain. These latter two factors provide sufficient "physical or other mental impairments imposing additional and significant work-related limitation of function." 20 C.F.R. Parts 404, Subpart P, Appendix I, Section 12.05 C. Because listed "impairments ... are considered serious enough to prevent a person from doing any gainful activity," 20 C.F.R. at Section 404.1525(a), they automatically lead to a finding of disability without considering plaintiff's age, education, or work experience. *Id.* at Section 404.1520(d).

■ In cases where the Secretary's decision is not supported by substantial evidence, the Court must "revers[e] the decision of the Secretary, with or without remanding the cause for a rehearing." *Breeden v. Weinberger*, 493 F.2d 1002, 1011–12 (4th Cir.1974). Reversal, as opposed to remand, is appropriate when "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when re-opening the record for more evidence would serve no purpose." *Id.* at 1012. *See Coleman v. Weinberger*, 538 F.2d 1045 (4th Cir.1976).

■ The Secretary's decision is not supported by substantial evidence and no purpose would be served in re-opening the record for further evidence. Indeed, the evidence of record is sufficient to convince the Court that plaintiff is disabled.

Accordingly, for the foregoing reasons, an Order will be separately entered reversing the Secretary's decision and granting plaintiff's motion for summary judgment.