885 F.2d 871
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patricia CASSELL, Plaintiff-Appellant,
v.
SECRETARY, HEALTH AND HUMAN SERVICES, Defendant-Appellee
 No. 89-1068.
 United States Court of Appeals, Sixth Circuit.
 Sept. 25, 1989.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and THOMAS A. HIGGINS, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Patricia Cassel married William Cassel on May 2, 1970. He died of a pulmonary embolism on November 16, 1985, survived by the appellant and their two children. Prior to his death, Mr. Cassel had been employed for at least ten years by the United States Postal Service. This employment entitled him to a pension plan but not to social security coverage. On November 25, 1985, Patricia Cassel applied for survivor's insurance benefits. Her applications were denied initially and upon reconsideration.
 
 
 2
 On August 19, 1986, a hearing was held before ALJ Theodore Stephens. Evidence presented to the ALJ included Mrs. Cassel's testimony, SSA records, and letters from the president and vice president of the Calcaterra funeral home. ALJ Stephens initially noted that in order to be eligible for mother's or child's insurance benefits, a claimant must show that the wage earner died while fully or currently insured. 42 U.S.C. Secs. 402(d)(i); 20 C.F.R. Secs. 404.350, 404.390 (1988). J.App. at 27-28. A wage earner is considered fully insured if he has earned one quarter of coverage for every year after he attained age 21 through the year before the year of his death. 42 U.S.C. Sec. 214(a); 20 C.F.R. Sec. 404.110(b)(3) (1988). For years prior to 1978, a quarter of coverage is defined as any calendar quarter in which an individual was paid $50 or more in wages. 42 U.S.C. Sec. 213(a); 20 C.F.R. Sec. 404.141(b) (1988). Since William Cassel was 38 years old at the time of his death, ALJ Stephens determined that he needed 16 quarters of coverage to be fully insured.
 
 
 3
 The ALJ then examined the amount of wages that Mr. Cassel allegedly earned. The Social Security Administration (SSA) is required to establish and maintain records of the amount of wages paid to each individual and of the periods in which such wages were paid. 42 U.S.C. Sec. 405(c)(2)(A). The absence of an entry in the earnings record for any period is evidence in any administrative or judicial proceeding that no wages were paid in that period. 42 U.S.C. Sec. 405(c)(3). After the expiration of the applicable time limitation (three years, three months, and fifteen days after the end of any calendar year in which an individual received earnings), the absence of an entry as to wages paid in any time period is presumptive evidence that no wages were paid during the period in question. 42 U.S.C. Sec. 405(c)(4); 20 C.F.R. Sec. 404.803 (1988). While this presumption can be rebutted and the earnings record can be amended to reflect that wages were actually paid during a particular period, see, 42 U.S.C. Secs. 405(c)(5)(G), (H); 20 C.F.R. Secs. 404.822(e)(4)(5) (1988), the presumption protects the government from spurious or merely inaccurate and unverifiable claims based on after-the-fact evidence. Butts v. Secretary of Health and Human Services, 706 F.2d 107, 108 (2d Cir.1983) (quoting Hollman v. Department of Health and Human Services, 696 F.2d 13, 17 (2d Cir.1982)).
 
 
 4
 SSA earnings records presented to the ALJ indicate that, from 1950 to 1968, Mr. Cassel had earned 14 quarters of coverage. J.App. at 24. He had no record of earning or coverage for 1969. The SSA entries for the contest quarters in 1970 and 1971 were as follows:
 
 70 # NNN $34 (Regular U Warnings)
 71 # NN# $88.53 (Regular U Earnings)
 
 5
 Appellant's Brief at 4.
 
 
 6
 In his August 19, 1986, decision, ALJ Stephens determined that Mr. Cassel was entitled to 15 quarters of coverage based on pay stubs of the deceased supplied by Mrs. Cassel. This evidence showed that Mr. Cassel was paid wages totaling $79.45 in the first quarter of 1971. J.App. at 25. However, the ALJ concluded that the letters from the Calcaterra funeral home supplied by Mrs. Cassel concerning Mr. Cassel's earnings in the last quarter of 1970 were not credible evidence and thus were insufficient to overcome the statutory presumption provided in 42 U.S.C. Sec. 405(c)(4)(B) that no wages were paid in that period. Therefore, the ALJ found that since Mr. Cassel had only 15 of the necessary 16 quarters of coverage, he was not a fully insured individual.
 
 
 7
 On October 17, 1987, Mrs. Cassel appealed the ALJ's decision and submitted an affidavit from the president of Calcaterra Funeral Home, Louis Calcaterra. Louis Calcaterra attested that he remembered hiring Mr. Cassel in October 1970 as a temporary lot guard. Although the records from the Funeral Home were no longer available, Louis Calcaterra stated that based on his investigation which included interviewing several employees, he had determined that Mr. Cassel earned $84.00 and worked 28 hours in the last quarter of 1970. Based on this newly supplied evidence, the Appeals Council granted review and remanded the matter to ALJ Carpenter for rehearing.
 
 
 8
 ALJ Carpenter did not hold another hearing but instead sent interrogatories to Paul Calceterra, the vice president of the Calcaterra Funeral Home, to clarify statements made in the previously submitted letter. In addition, ALJ Carpenter made inquiries at Century Security (formerly Star), which was under contract to supply security staff to Calcaterra during those years. Century had no records available from that time period and the SSA records showed that no wages were paid for that period.
 
 
 9
 On September 10, 1987, ALJ Carpenter denied Mrs. Cassel's application for survivor's benefits based on the findings that, although her husband kept meticulous records, there were no SSA records for the disputed timer period. ALJ Carpenter also found that the answers to interrogatories submitted by Paul Calcaterra contained errors and discrepancies in the withholding calculation, were based on mere assumption and memory and, therefore, lacked credibility.
 
 
 10
 The ALJ's determination was approved by the Appeals Council and affirmed by the district court. This timely appeal followed.
 
 I.
 
 11
 Once the Secretary makes a determination regarding an issue of coverage, these findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. Sec. 405(g) (1982). Judicial review is limited to determining whether there is substantial evidence in the record to support the Secretary's findings and whether the Secretary employed the proper legal criteria in reaching his decision. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Evans v. Secretary of Health and Human Services, 820 F.2d 161, 164 (6th Cir.1987) (Martin, Nelson, Contie) (Per Curiam). The court must examine the record "taken as a whole," Allen v. Califano, 613 F.2d 535 (6th Cir.1986) (en banc ), and we are precluded from trying the case de novo. Finally, this court may neither resolve conflicts in the evidence nor decide questions of credibility. Garner v. Heckler, 745 F.2d at 387.
 
 A.
 
 12
 Mrs. Cassel claims she was denied a substantive right in the proceeding because no hearing was held on remand from the Appeals Council. The record indicates that ALJ Carpenter notified Mrs. Cassell of his intended course of action and, in addition, he supplied her with copies of all of the exhibits including the interrogatories. Furthermore, ALJ Carpenter gave her the opportunity to present additional evidence and to comment on the evidence which was before him. Despite these actions, Mrs. Cassel did not respond to the notice, challenge the interrogatories, offer additional evidence, or request a hearing. Moreover, this issue was not raised to the Appeals Council which could have easily corrected the defect. Thus, because there is no evidence that Mrs. Cassell was denied a substantive right in the proceeding, we reject this claim.
 
 B.
 
 13
 Mrs. Cassel's second claim is that the ALJ erred in finding that the letters, affidavits and answers to interrogatories submitted by the Calcaterras lacked credibility because they were based on memory and assumption alone. Social Security Rule 87-17 discusses the evidence to be submitted in circumstances such as these and states in pertinent part that:
 
 
 14
 "With respect to correctness of earnings record, primary or preferred evidence may consist of (1) W-2 or W-2C form; (2) statement signed by employer or custodian of employer's records; (emphasis added).
 
 
 15
 Mrs. Cassel claims that the letters and affidavits of the President and Vice President of Calcaterra Funeral Home constitute primary evidence that William Cassel was paid more than fifty dollars in the fourth quarter of 1971 and thus qualifies for coverage. Furthermore, she asserts that under the rule of Breeden v. Weinberger, 493 F.2d 1002 (4th Cir.1976), the ALJ's stated reasons for finding that the Calcaterras' testimony is not credible are unreasonable and arbitrary.
 
 
 16
 The Secretary has presented no evidence other than the earnings records of William Cassel, and relied entirely on the statutory presumption that the absence of an entry as to wages paid to an individual after expiration of the statutory time limit is presumptive evidence that no wages were paid to an individual during the period in question. Breeden v. Weinberger, 493 F.2d 1002, 1006 (4th Cir.1974). In Breeden, the court held that the statutory "blank record" presumption survives the offering of contradictory evidence. Thus, the blank record presumption may itself constitute substantial evidence that no wages were paid. However, the Breeden court noted that continuing reliance on the presumption must be reasonable, fair and justified in light of the evidence and stated:
 
 
 17
 Under the standards of Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), we must review the entire record taking into account both the support for the administrative decision and "whatever detracts from its weight." Id. at 488, 71 S.Ct. at 464. If reliance on the presumption is arbitrary or if it is not "justified by a fair estimate of the worth of the testimony of witnesses" who support the claimant, id. at 490, 71 S.Ct. at 466, we must conclude that the administrative decision is not supported by substantial evidence.
 
 
 18
 The court established that the blank entry presumption can be rebutted by a preponderance of the evidence and stated that neither 42 U.S.C. Sec. 405 nor 20 C.F.R. Sec. 404.702 require that a claimant have written records nor that each corroborating witness have kept a record of claimant's work. 493 F.2d at 1010. The court then held that the Secretary's rejection of Breeden's evidence solely on the ground that it was based on witnesses' memories and estimations was unreasonable and arbitrary. Id.
 
 
 19
 In applying Breeden to the instant case the ALJ's decision would be unreasonable and arbitrary had the ALJ rejected the testimony of Louis and Paul Calcaterra solely because it was based on memory and assumption. However, the ALJ had the duty to weigh the evidence and make a finding as to whether it was both credible and sufficient to rebut the statutory presumption by a preponderance of the evidence.
 
 
 20
 The ALJ found that the answers to interrogatories made by Paul Calcaterra amounted to retractions of his statements in the letter previously submitted. Likewise, Louis Calcaterra stated that he remembered hiring Mr. Cassel, and that he was paid wages totalling $84.00 in the fourth quarter of 1971. He stated that he based this conclusion on his memory and on an investigation he conducted which included interviews of his staff. J.App. at 71. However, in his affidavit he does not describe his investigation nor whether the employees who claimed to remember how much Mr. Cassel was paid were in fact responsible for handling the payroll.
 
 
 21
 Unlike the plaintiff in Breeden who presented testimony from a number of witnesses, including co-workers, all of whom stated that Breeden had been employed for a sufficient number of hours at a standard salary, Mrs. Cassel relies on Louis Calcaterra's statement that he remembers hiring her husband, which is not supported by corroborating statements from other employees, nor does it contain enough facts concerning the terms of William Cassels' employment to make it credible.
 
 
 22
 The instant case closely resembles Butts v. SHHS, 706 F.2d 107 (2nd Cir.1983), wherein the plaintiff was denied benefits despite testimony from his employer that Butts had worked many additional quarters for which wages were unreported. The court held that because the employer's testimony was not substantiated by any proof, Butts was not entitled to benefits. Id. The Calcaterras' assertion about William Cassel's employment are likewise unsubstantiated by any proof. Therefore, the ALJ and the district court relying on Butts correctly found that Mrs. Cassel had failed to meet the burden of rebutting the statutory presumption by a preponderance of the evidence. Thus, the ALJ reasonably relied on the statutory presumption as substantial evidence and did not commit any error.
 
 
 23
 Finally, Mrs. Cassel claims that the Secretary only ran a computer search under the employer number of Century (formerly Star) Security Services and not under the employer number of the Calcaterra Funeral Home. The Secretary's brief on appeal contends that the only computer search was run under William Cassel's social security number and that this search failed to reveal that he was paid any wages for the disputed quarter.
 
 
 24
 The Secretary, the ALJ and the district court have relied heavily on Butts v. SHHS, 706 F.2d 107 (2d Cir.1983) and on Breeden, supra. In Butts, the Secretary ran a computer search of earnings records under two social security numbers used by the claimant as well as the employer reporting number. None of these searches provided evidence that Butts had worked the requisite number of hours needed to prove entitlement to coverage. The court denied benefits because, although the employer stated that the claimant worked for many additional quarters that were not recorded, after four administrative hearings Butts was unable to support his claim with acceptable proof.
 
 
 25
 Turning to the instant action, while it is true that the Secretary could have run computer searches under both employers' numbers, the burden of proof is on the claimant, not the Secretary. 706 F.2d at 108. If Mrs. Cassel had submitted enough contradictory evidence to rebut the statutory presumption, then the Secretary would have been required to present supplementary evidence in order to satisfy the substantial evidence standard. Since Mrs. Cassel presented no credible contradictory evidence, the ALJ committed no error in not requiring the Secretary to supplement the evidence by running computer searches under the employer numbers.
 
 II.
 
 26
 For the reasons stated above, we find the Secretary's decision to deny Patricia Cassel survivor's benefits is supported by substantial evidence. Therefore the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee, sitting by designation