16 F.3d 412
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Raed Nazek DAMREH, Defendant-Appellant.
 No. 92-5537.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 30, 1993.
Decided Feb. 3, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CR-91-94)
 John Everette Noland, Jr., Raleigh, NC, for appellant.
 James R. Dedrick, U.S. Atty., David P. Folmar, Jr., Asst. U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINS, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Following a jury trial, Raed Nazek Damreh was convicted of conspiracy to commit arson and aiding and abetting arson. He appeals, claiming that the district court improperly denied his motions for judgment of acquittal and for a new trial. We find no merit in his claims; consequently, we affirm.
 
 
 2
 Around 2:00 a.m. on January 17, 1991, a fire and explosion occurred at Cooke's Quik Shop, a business owned by Damreh in Wake Forest, North Carolina. James Allen Higgs ran away from the building towards a police officer. Suffering from severe burns, Higgs confessed to intentionally setting fire to the building and begged for help.
 
 
 3
 Higgs was hospitalized for several months after the incident. After his release from the hospital, he was arrested and charged with breaking and entering, larceny, and arson. Higgs told the police that he had plotted with Damreh to set the fire. Damreh told Higgs how to enter the store and disconnect the store's video camera. He also gave Higgs gloves and a stocking mask, and showed him specifically where to pour the gasoline. Higgs said Damreh agreed to pay him $1000 for his services.
 
 
 4
 Higgs cooperated with a subsequent investigation of Damreh, allowing the police to record their conversations and testifying for the government at Damreh's trial. On August 7, 1991, Higgs approached Damreh for the first time since the fire. Although Damreh did not specifically discuss the arson with Higgs, he did not act surprised to see the man who he knew had burned down his store. Law enforcement agents taped a September 11, 1991, telephone conversation, during which Damreh told Higgs that "the stuff" would be delivered to Higgs' address. The next day, Higgs and Damreh had another recorded telephone conversation in which Damreh directed Higgs to wait in a particular parking lot where someone would deliver an envelope. On September 18, 1991, Higgs wore a wire and drove to the convenience store where a man later identified as Moyad Abu-Saleh handed him an envelope containing $500. Abu-Saleh delivered the envelope to Higgs as a favor to Damreh.
 
 
 5
 Damreh was indicted on two counts: (1) conspiracy to commit arson in violation of 18 U.S.C. Sec. 371 (1988); and (2) aiding and abetting arson in violation of 18 U.S.C. Sec. 2 (1988) and 18 U.S.C.A. Sec. 844(i) (West Supp.1993). At Damreh's trial, Quinton Alston and Carl Forte testified that, before Higgs started the fire, they had heard that Damreh wanted his store burned down. They testified that on the day of the fire, they saw Higgs go into Cooke's Quik Shop to talk with Damreh and leave with stockings and gloves.
 
 
 6
 Jerry Watkins and Ellis Allen testified that Damreh had asked them to burn down his store. Like Higgs, Watkins testified that Damreh gave specific instructions for committing the crime, in particular, telling him to unplug the store's camera, pour gasoline in specific places, and wear a stocking over his face.
 
 
 7
 Damreh and his business partner collected approximately $18,000 in insurance money for the fire. Thomas Garnier, an auditor with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), testified that he reviewed Damreh's business ledgers and concluded that Cooke's Quik Shop was experiencing serious financial problems at the time of the fire.
 
 
 8
 Damreh presented no evidence. After the jury found Damreh guilty on both counts of the indictment, he filed motions for judgment of acquittal and for a new trial. The district court denied the motions. The court sentenced Damreh to concurrent forty-one month prison terms, plus concurrent three year terms of supervised release. Damreh timely appealed.
 
 
 9
 Damreh claims that the district court erred by denying his motion for judgment of acquittal. This Court reviews the denial of a motion for acquittal under a sufficiency of the evidence standard. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 60 U.S.L.W. 3879 (U.S.1992). "To sustain a conviction the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir.1993); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 10
 Damreh concedes that, viewed in the light most favorable to the prosecution, the evidence is sufficient to prove each element of the crimes charged if Higgs' testimony is acceptable. However, Damreh argues that Higgs' testimony is inherently incredible because immediately after the fire he claimed that he set the blaze as a hate crime, but at Damreh's trial he denied such motivation and testified that he did it for the money Damreh offered him.
 
 
 11
 The credibility of witnesses is within the sole province of the fact finder and generally is unreviewable on appeal. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). But cf. Breeden v. Weinberger, 493 F.2d 1002, 1010 (4th Cir.1974) (credibility determinations based on improper or irrational criteria cannot be sustained). Higgs' credibility was challenged by the defense during cross-examination. However, most of his trial testimony was corroborated by other evidence presented at trial. Ultimately, the question of Higgs' credibility was a jury question and this Court "must assume that the jury resolved all contradictions in testimony in favor of the Government." United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir.1993). The jury was entitled to find Higgs' testimony credible.
 
 
 12
 Damreh also contends that the district court erred by denying his motion for a new trial. As this Court explained:
 
 
 13
 "[Fed. R. Crim. P.] 33 allows a district court to grant a new trial in the interest of justice. When the motion attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence. In deciding a motion for a new trial, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government. Thus, it may evaluate the credibility of the witnesses. When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial." United States v. Campbell, 977 F.2d 854, 860 (4th Cir.1992) (quoting United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir.1985)(citations omitted)), cert. denied, 61 U.S.L.W. 3583 (U.S.1993). This Court reviews the denial of a motion for a new trial for abuse of discretion. Campbell, 977 F.2d at 860.
 
 
 14
 Damreh complains that Higgs' testimony was incredible and that those whose testimony corroborated that of Higgs were convicted felons engaged in a conspiracy to get Higgs a lighter sentence and therefore were unreliable. The defense had the opportunity to cross-examine all witnesses and, in doing so, exposed inconsistencies in witnesses' testimony as well as certain witnesses' interest in protecting Higgs.
 
 
 15
 Higgs testified that Damreh hired him to burn down the building. Other witnesses corroborated this testimony by testifying that they knew about this agreement or that they knew that Damreh was trying to find someone to burn his building. Independent evidence, such as the ATF auditor's testimony about Damreh's failing business, Damreh's recorded post-arson conversations with Higgs, and the testimony of Damreh's friend who delivered the cash-filled envelope to Higgs at Damreh's request, also lend support to this testimony. In light of all of this evidence, we find that the jury's guilty verdict was not unjust and that the district court did not exceed its discretion by denying the motion for a new trial.
 
 
 16
 Damreh also points out that his trial counsel subsequently was disbarred and indicted, although he fails to explain the reasons for these actions. Claims of ineffective assistance of counsel should be raised by motion under 28 U.S.C. Sec. 2255 (1988) in the district court and not on direct appeal, unless it "conclusively appears" in the trial record that counsel did not provide effective representation. United States v. Fisher, 477 F.2d 300, 302 (4th Cir.1973); see also United States v. DeFusco, 949 F.2d 114, 120 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3717 (U.S.1992). The record does not show that counsel failed to represent Damreh effectively in this case. Therefore, this Court need not consider the ineffective assistance claim on direct appeal.
 
 
 17
 For these reasons, we affirm Damreh's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.