**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 96-4118

MICHAEL A. LIEBERMAN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Walter E. Black, Jr., Senior District Judge.
(CR-93-391-B)

Argued: December 6, 1996

Decided: January 24, 1997

Before WIDENER, MURNAGHAN, and NIEMEYER,
Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion. Judge
Niemeyer wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Howard Sacks, Baltimore, Maryland, for Appel-
lant. Harvey Ellis Eisenberg, Assistant United States Attorney, Balti-
more, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia,
United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The defendant, Michael A. Lieberman, an attorney and certified public accountant, was indicted for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (1994 & Supp. 1996). He practiced alone frequently and over a substantial period of time represented Christopher Ecker. The representation concerned legal, perfectly public matters, especially preparation of income tax returns. Ecker, so far as the record shows, made no revelation to Lieberman of the sources from which Ecker derived assets for the financial transactions in which Ecker engaged or from which to meet his tax obligations.

The matter is of controlling importance since Ecker was a frequent and successful marijuana smuggler, particularly from Thailand, and from such activities derived substantial sums of money. The United States indicted Lieberman for money laundering, on the belief that many of the sums received by Lieberman from Ecker to carry on business ventures for Ecker to meet the income tax liabilities shown on returns prepared by Lieberman (and which dealt only with legal activities by Ecker), as well as Lieberman's attorney's fees, were products of the illegal drug activity. However, the fact of such a source was not enough alone to prove the money laundering. In addition, proof of knowledge of an illegal source was requisite. United States v. Heaps, 39 F.3d 479 (4th Cir. 1994); United States v. McDougald, 990 F.2d 259 (6th Cir. 1993); United States v. Campbell , 977 F.2d 854 (4th Cir. 1992) (a conviction of money laundering was possible because there was evidence of actual subjective knowledge), cert. denied, 507 U.S. 938 (1993). The government acknowledges that actual subjective knowledge is essential to proof of guilt. Direct, and even indirect, proof was not forthcoming. Knowledge of other drug dealers or of other acquaintances to whom Ecker revealed his drug activities was shown,[1] but there was absolutely no proof that Lieberman was told of

_____

[1] Generally, Ecker claimed to be engaged in legitimate business.

2

or was present at or otherwise learned of the illegality of Ecker's activities or the resulting illegal proceeds.[2]

The prosecution relied on and the district judge allowed the doctrine of willful blindness to permit the jury to find an inference of knowledge. The fact that Ecker came from a respectable family and that his father had been the mayor of Rockville, Maryland was one proof asserted[3] together with Ecker's lack of probable sources of legal funds, which, it was asserted, demonstrated that the money received from Ecker by Lieberman to meet altogether legal obligations, such as legal fees and contractual debts were of suspicious origin. But a Mayor of Rockville could have been wealthy and Ecker's lack of sources of legal funds at the time of trial does not establish what his situation was at the earlier times when he dealt with Lieberman. The lottery and the race tracks are regularly involved in favoring the lucky, sometimes with substantial sums of money. We know of no and the government has suggested no requirement that a lawyer or public accountant must know from where a client's money comes. Several lawyers who handled transactions involved in the case testified that they never asked about the source of money provided by Ecker. Hence concluding knowledge from merely not asking is outright speculation.

In short, there has been no proof, let alone proof beyond a reasonable doubt, of anything about which Lieberman was willfully blind. Therefore, while the instruction on willful blindness may have been correct, the evidence to support it was wholly lacking.

Consequently, the judgment of conviction is reversed and the case is remanded for entry of a judgment of acquittal.

REVERSED AND REMANDED.[4]
_____

**2** On one occasion, Ecker claimed that Lieberman was aware of all his business dealings, but the reference was to the legal business dealings.
**3** There was no evidence of either knowledge by Lieberman of a lavish life style by Ecker, or indeed, of actual such lavish life style.
**4** Ecker was also charged, but pleaded the Fifth Amendment so was not available as a witness for either the government or Lieberman. Undoubt-

3

NIEMEYER, Circuit Judge, dissenting:

The question we have is whether the government presented sufficient circumstantial evidence to have allowed any reasonable jury to find beyond a reasonable doubt that Michael Lieberman conspired to launder illegal money of his client, Christopher Ecker. Because I believe the evidence was sufficient, I would affirm the jury's verdict.

While the government was unable to present direct evidence that Lieberman knew Ecker's illegal drug activity was the source of his money, the circumstantial evidence and common sense support the conclusion that he knew enough to attempt to place himself in a position of deniability.

For six years Lieberman, who was both an accountant and a lawyer, acted as Ecker's financial consultant, accountant, and lawyer. In that capacity, according to the evidence, he "was aware of all of [Ecker's] business dealings and was hired to help him . . . invest his money." Evidence was presented that Lieberman was not only involved in all of Ecker's investments, but also acted aggressively in negotiating deals on Ecker's behalf.

It is uncontroverted that during the period in which Lieberman advised Ecker, Ecker was a marijuana dealer who had made millions of dollars in that illegal business; he made $4 million in one transaction alone. While Ecker had income from legitimate business for which Lieberman prepared and filed tax returns, the amount of that income claimed during those years was modest, ranging from $34,000 to $74,000. But during the same period, Lieberman was handling transactions on behalf of Ecker in the six-figure range, far beyond the

_____

edly, Ecker was almost certainly the most knowledgeable source of information as to Lieberman's knowledge of drug source or the absence thereof. Ecker's plea of guilty, which would have negated the availability of the Fifth Amendment, was close to being finally negotiated when Lieberman was tried, but the government did not seek a deferral of Lieberman's trial to secure Ecker's testimony. The fact suggests that Ecker's testimony would not have been helpful to the prosecution on the issue of Lieberman's knowledge of Ecker's illegal activities.

4

amounts disclosed on Ecker's tax returns. No legitimate source for Ecker's additional income was ever offered.

While the government was unable to impute direct knowledge to Lieberman of Ecker's drug dealings, it did show that Lieberman knew that Ecker acquired money with "a lot of risk." The government presented testimony, moreover, that Ecker was cavalier about disclosing his marijuana deals. There was evidence that he advised both Marc Klein and his landlord of the $4 million marijuana deal. At one point, when Ecker turned over a duffle bag full of cash (about $200,000 worth) to invest in Klein's business, Ecker said only he, Lieberman, Klein and one other person knew about the deal.

From this evidence, and other details presented by the government, the jury could well have concluded beyond a reasonable doubt that Lieberman either knew of Ecker's illegal dealings or deliberately turned a blind eye to them in order to be able to deny knowledge. Accordingly I would affirm Lieberman's conviction as a conspirator in Ecker's money laundering efforts.

5