**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JOHN F. MESSER,

No. 97-4504

Defendant-Appellant,

TRANSOUTH FINANCIAL CORPORATION;
VIRGINIA EMPLOYMENT COMMISSION,
Parties in Interest.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-97-35)

Submitted: February 3, 1998

Decided: March 16, 1998

Before WILKINS and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Thomas K. Maher, RUDOLF & MAHER, P.A., Chapel Hill, North
Carolina, for Appellant. Helen F. Fahey, United States Attorney,
James B. Comey, Assistant United States Attorney, Richmond, Vir-
ginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John F. Messer was convicted on one count of conspiracy to structure currency transactions (18 U.S.C. § 371 (1994)); two counts of structuring currency transactions (31 U.S.C. § 5324(a)(3) (1994)); two counts of money laundering (18 U.S.C. § 1956(a)(1)(B)(I) (1994)); and one count of obstruction of justice (18 U.S.C. § 1505 (1994)). He was sentenced to 100 months' imprisonment and two years of supervised release and ordered to pay a $15,000 fine and a $300 assessment. (JA at 644-50). On appeal, Messer raises various errors with regard to the jury instructions, sufficiency of the evidence and sentencing enhancement. Finding no error, we affirm.

Viewed in the light most favorable to the Government, see Glasser v. United States, 315 U.S. 60, 80 (1942), the evidence at trial established a series of transactions for the purpose of money laundering and a series of bank deposits structured to avoid reporting obligations. Messer owned West Broad Autohaus, a used car dealership specializing in high-end import automobiles in Richmond, Virginia. Many of his customers were drug dealers who purchased cars priced in excess of $10,000 with cash. Messer instructed his employees not to complete IRS Form 8300.[1]

Many of the purchases involved "straw purchasers" or nominee buyers. In these instances, the drug dealer would provide the cash for the sale and have title placed in someone else's name. Messer prepared sales documents disguising the total cash involved in the transaction by disclosing false cash rebates or trade-ins or a non-existent financing agreement. Messer also instructed his employees to do likewise. There was evidence that Messer actually knew that many of his

_____

[1] Companies must file Internal Revenue Service Form 8300 for cash transactions $10,000 or greater.

2

customers were drug dealers. There was also evidence that Messer chose to remain ignorant of that fact.

In one instance, Messer created a bogus sales record, reflecting a $1500 credit for trading in a 1983 Volkswagen Rabbit, and forged a customer's signature. In response to a Drug Enforcement Agency administrative subpoena, Messer submitted the forged document. This conduct was the basis for the obstruction of justice charge.

Although the transactions concerned large cash amounts, Messer divided the cash proceeds into small groups and made a series of deposits at different banks. Thus, the depositing banks were not compelled to prepare a Currency Transaction Report ("CTR") as required by 31 U.S.C. § 5313(a) (1994).

On appeal, Messer challenges the court's instructions regarding the money laundering charges and the obstruction of justice charge. With regard to the money laundering counts,[2] the court instructed the jury:

> that when knowledge of the existence of a particular fact is an element of an offense, as it is in counts four and five, such knowledge is established if the defendant was aware of a high probability of its existence, unless you find he actually believed that it did not exist.

This instruction concerns the conscious avoidance of knowledge and was derived from Model Penal Code § 2.02(7). See United States v. Lanza, 790 F.2d 1015, 1021-22 (2d Cir. 1986). During jury deliberations, the jury asked whether willful blindness constitutes knowing that proceeds came from unlawful activity. Defense counsel asserted

_____

[2] A defendant is guilty of money laundering when he "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part--to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i).

3

that the response should be in the negative because willful blindness could never constitute knowledge. The court instructed the jury:

> Willful blindness standing alone does not constitute knowing. Willful blindness in the face of awareness of a strong probability that some of his client's funds used to purchase cars were derived from their engaging in criminal activity, then the element of knowledge is satisfied if you believe beyond a reasonable doubt that willful blindness resulted from a deliberate effort not to learn what otherwise may have been obvious.

Messer makes the following four arguments with respect to the instruction: (1) the original instruction shifted the burden of proof to the defendant because it did not obligate the Government to show actual knowledge; (2) the original instruction did not instruct the jury that if the jury found a high probability of the existence of a fact, to find actual knowledge, it must find Messer avoided learning the truth; (3) the willful blindness instruction failed to state that willful blindness could not be found if the jury found that Messer believed the proceeds were from non-criminal sources; and (4) the evidence did not support a willful blindness instruction.

To sustain a conviction for money laundering under 18 U.S.C. § 1956, the Government must prove beyond a reasonable doubt that Messer had actual knowledge that the transactions to purchase cars involved proceeds from illegal activities. See United States v. Campbell, 977 F.2d 854, 857 (4th Cir. 1992). Generally, one cannot be convicted based upon what one should have known. See id.; see also United States v. Heaps, 39 F.3d 479, 484 (4th Cir. 1994) (same). Actual knowledge can be found if the defendant was aware to a high probability of the true nature of the transactions and deliberately chose to avoid finding the truth for fear the true nature would be revealed. Such "willful blindness" extends the reach of the actual knowledge requirement. See Campbell, 977 F.2d at 857.

Jury instructions are not evaluated in isolated segments, but are considered as a whole. See United States v. Cropp, 127 F.3d 354, 360 (4th Cir. 1997), cert. denied, ___ U.S. ___, 1998 WL 23851 (U.S. Jan. 26, 1998) (No. 97-7265); United States v. Muse, 83 F.3d 672,

4

677 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3264 (U.S. Oct. 7, 1996) (No. 96-5589). We find, when considering the original jury instruction and the instruction given in response to the jury question as a whole, all the necessary elements of the conscious avoidance instruction were communicated to the jury. There was "reference to a purposeful avoidance of the truth, an awareness of high probability, and the absence of the defendant's actual belief in the nonexistence of the crucial fact." United States v. Aulet, 618 F.2d 182, 190 (2d Cir. 1980) (citations omitted). The elements excluded in the original instruction were included in response to the jury's question. Similarly, the element excluded in the response was included in the original instruction. It is presumed the jurors considered the instructions as a whole and followed those instructions. See Richardson v. Marsh, 481 U.S. 200, 211 (1987); United States v. Cooley, 1 F.3d 985, 997 (10th Cir. 1993).

In addition, Messer never objected at trial on the basis that the original instruction did not include an element on avoidance of the truth or that the response did not include a direction that there was no willful blindness if the jury found that Messer actually believed the proceeds came from legal transactions. Insofar as these errors are concerned, our review is limited to plain error. Since there was no error, it follows there was no plain error. See United States v. Cedelle, 89 F.3d 181, 185 (4th Cir. 1996); Fed. R. Crim. P. 52(b).

Messer also did not object to the willful blindness instruction on the basis that it was unsupported by the evidence. Therefore, this Court should review only for plain error. See Cedelle, 89 F.3d at 185. The willful blindness instruction is permitted in those instances where the defendant asserts a lack of knowledge and the evidence supports an inference of deliberate ignorance. See United States v. Guay, 108 F.3d 545, 551 (4th Cir. 1997); United States v. Whittington, 26 F.3d 456, 463 (4th Cir. 1994). "[W]hen there is evidence of both actual knowledge and deliberate ignorance . . . a willful blindness instruction is appropriate." United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991).

Although there was substantial evidence that Messer had actual knowledge concerning the source of the proceeds used for the purchases, there was also evidence that he remained deliberately ignorant

5

of the truth. Accordingly, we find there was sufficient evidence to support the willful blindness instruction.

During deliberations, the jury asked whether "submitting a document prepared prior to [a] proceeding which represents a falsification of an event or transaction [is] obstruction of justice." The court instructed the jury that "at the time of preparation of documents, representing a falsification is of no consequence. However, there are other elements which must be found by you in order to conclude that there was an obstruction of justice as charged in count six." Messer contends that the false document was prepared for a reason unrelated to obstructing an investigation.

Submitting false documents in response to an administrative subpoena with "intent to avoid, evade, prevent, or obstruct compliance, in whole or in part, with any civil investigative demand" violates 18 U.S.C. § 1505. There is no requirement that the document be prepared in anticipation of submission pursuant to an administrative subpoena. Thus, we find the court's instruction proper.

A verdict must be sustained if there is substantial evidence, viewed most favorably to the government, to support it. See Glasser, 315 U.S. at 80. Circumstantial, as well as direct evidence, is considered and the government is given the benefit of all reasonable inferences from the facts proved to the facts sought to be established. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). The central question is whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

With regard to the money structuring convictions, Messer contends the evidence was insufficient to show he: (1) acted with knowledge that structuring a deposit to avoid a CTR is illegal; (2) conspired with anyone to illegally structure bank deposits; and (3) deposited the proceeds from the sale of the car to Burton with the intent to structure the deposits.

Financial institutions are required by law to file a CTR for a transaction or series of transactions involving currency in excess of

6

$10,000. See United States v. Beidler, 110 F.3d 1064 (4th Cir. 1997); 31 U.S.C. § 5313(a). It is unlawful for a depositor to structure the deposits for the purposes of avoiding the reporting requirement. See 31 U.S.C. § 5324(a)(3). When the unlawful conduct occurred in this case the Government was required to show that the defendant willfully violated the antistructuring law. See 31 U.S.C. § 5322(a)(b) (1988). "To establish that a defendant `willfully violated' the antistructuring law, the Government must prove that the defendant acted with knowledge that his conduct was unlawful."[3] Ratzlaf v. United States, 510 U.S. 135, 137 (1994).

In this instance, Messer knew that his deposits were proceeds from other illegal activity. See United States v. Hurley, 63 F.3d 1, 16 (1st Cir. 1995). Cash proceeds were often divided into groups of less than $10,000 and deposited into the same bank account over a period of days and or deposited at a different bank. He also deliberately neglected to file IRS Form 8300, a reporting requirement similar to a financial institution's obligation to file the CTR. Furthermore, he prepared purchasing documents to reflect cash payments of less than $10,000. In addition, he was informed of the bank's obligation to file a CTR.

With regard to the proceeds from the transaction with Burton, Messer contends that he merely deposited the proceeds in the order in which he received the cash from Houston. However, there was sufficient evidence to show that Houston was a co-conspirator in the scheme to structure deposits. Houston joined in Messer's practice of preparing false purchasing documents and financing agreements. A reasonable inference of the Burton transaction was that Houston was providing the proceeds in amounts less than $10,000 for the purpose of structuring the deposits.

Thus, taking the view most favorable to the Government, we find that Messer has failed to meet his burden in challenging the sufficiency of the evidence. Although he provides plausible non criminal

_____

**3** Congress has since amended § 5322 to omit the willfulness requirement with respect to violations of § 5324. See 31 U.S.C. § 5322(a)(b) (1994).

7

inferences for his conduct, the jury believed the inferences argued by the Government. See Beidler, 110 F.3d at 1067.

Messer also contends that the evidence was insufficient to support one of his convictions for money laundering. In that instance, Messer contends the drug dealer intended the purchases as gifts for two of his couriers and there was no evidence of an intention to hide the true nature of the proceeds. To the contrary, there was evidence that Messer directed that a false financing agreement be prepared for the specific purpose to disguise the total cash value of the transactions. Furthermore, he did not file the IRS Form 8300. He also structured the deposits of the proceeds. We find there was sufficient evidence to sustain this conviction.

At sentencing, Messer's offense level was increased by three levels after the court found the value of funds involved in the money laundering efforts was more than $350,000 and less than $600,000. See U.S. Sentencing Guidelines Manual § 2S1.1(b)(1) (1997). The court heard evidence of a series of transactions not contained in the indictment involving cash purchases, straw purchasers, and false purchasing documents. Together with the transactions shown at trial, the total value of funds involved was $416,000.

Messer contends there was insufficient evidence to support the court's decision to enhance his sentence because there was no evidence to show that he knew the funds were proceeds from illegal activities. Factual findings at sentencing are reviewed for clear error. See United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996). Such findings can be shown by a preponderance of evidence. See United States v. Morgan, 942 F.2d 243, 246 (4th Cir. 1991). In the instant case, the court heard detailed evidence of numerous transactions involving much of the same conduct proven at trial. Thus, we find the court's decision was not clearly erroneous.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument will not aid in the decisional process.

AFFIRMED

8